**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00045-HBB**

**JULIE A. JANDT**                                                                                          **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION**                                   **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Julie A. Jandt ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 18) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is reversed, and this matter is remanded, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered October 1, 2020 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

On March 2. 2017, Plaintiff filed an application for Supplemental Security Income (Tr. 16, 285-91). Plaintiff alleged she became disabled on September 1, 2009 as a result of chronic severe migraines, polycystic ovary syndrome, and depression (Tr. 16, 313).[1] Administrative Law Judge Walter R. Hellums ("ALJ") conducted a video hearing from St. Louis, Missouri (Tr. 16, 161). Plaintiff and her counsel, Mary Burchett-Bauer, participated from Bowling Green, Kentucky (Id.). John Pullman, an impartial vocational expert, testified during the hearing by telephone (Id.).

In a decision dated December 12, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-28). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 2, 2017, the application date (Tr. 18). At step two, the ALJ determined that Plaintiff has the following severe impairments: fibromyalgia syndrome, polycystic ovary syndrome, migraine, history of postural orthostatic tachycardia syndrome ("POTS"), obesity, and depression (Id.). The ALJ also determined all other impairments alleged and found in the record are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at a "severe" level for a continuous period of 12 months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source (Tr. 18-19). At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

---

1 Notably, in a disability report filed contemporaneously with the application, Plaintiff reported that she stopped working on April 7, 2015 (Tr. 313).

At step four, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following limitations: she is able to occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she is able to work in environments where noise levels are no louder than moderate, as defined by the Dictionary of Occupational Titles ("DOT"); she is able to work where lighting is no brighter than found in the average office setting; she must avoid all exposure to hazards, such as unprotected heights and unguarded moving machinery; and she is able to respond appropriately to occasional changes in work-related tasks and station (Tr. 21-22). Additionally, the ALJ found that Plaintiff has no past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from March 2, 2017 through the date of the decision (Tr. 28).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 282-84). The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y

of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 3

1.   Arguments of the Parties

Plaintiff challenges the ALJ's finding that her migraine headaches do not medically equal Listing 11.02 (DN 18 PageID # 1214-15). Plaintiff asserts the ALJ erred because he failed to actually evaluate the evidence, compare it to Listing 11.02, and give an explained conclusion, in order to facilitate meaningful judicial review (Id.). See Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011). Without an explained conclusion, Plaintiff contends it is impossible to say that substantial evidence supports the ALJ's finding that her migraine impairment does not medically equal Listing 11.02 (Id.). See Reynolds, 424 F. App'x at 416. Plaintiff also contends the ALJ's error was not harmless because the evidence could reasonably support a finding that her migraines medically equal Listing 11.02B or 11.02D (DN 18 PageID # 1215). In support of her contention, Plaintiff cites her own testimony regarding the frequency and severity of her migraines (Tr. 167-70), her statements regarding the frequency and severity of her migraines memorialized in the treatment notes of her neurologists and Alysia G. Wheeler, APRN (Tr. 433-38, 459-65, 577-84, and Tr. 683-85, 837-47, 1100-06, 1113-21), imaging of her brain which showed a Chiari malformation type 1 (Tr. 593), and Ms. Wheeler's opinion concerning the severity of Plaintiff's migraines (Tr. 1108-11).

Defendant asserts that Plaintiff's perfunctory claim should be considered waived because she merely cites certain medical records and findings from Ms. Wheeler's assessment without explaining how this evidence demonstrates Plaintiff medically equals Listing 11.02B or 11.02D (DN 19 PageID # 1236-42). Regarding Listings 11.02B and 11.02D, Defendant points out there is no evidence of Plaintiff experiencing dyscognitive seizures at all (Id. PageID # 1238-39).

Additionally, relying on the ALJ's paragraph B criteria findings for Listing 12.04, Defendant contends Plaintiff cannot demonstrate a marked limitation in at least one of the five areas of function in Listing 11.02D (Id. PageID # 1239, citing Tr. 26).[2] Moreover, argues Defendant, 20 C.F.R. § 416.926 indicates the ALJ must rely on a medical opinion in order to determine medical equivalency and here the only medical sources to consider the issue, the state agency medical and psychological consultants, both concluded Plaintiff's impairments did not medically equal a listing (Id. PageID # 1240-41, citing Tr. 177, 183-84, 196-98, 205). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's migraines do not medically equal Listing 11.2 (Id. PageID # 1242).

2. Applicable Law

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006). Contrary to Defendant's assertion, Plaintiff has provided a sufficiently developed argument regarding the issue of whether her migraines medically equal Listing 11.02. Therefore, the Court will address the merits of her claim.

---

2 In addition to requiring dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, Listing 11.02D specifies the claimant must have a marked limitation in one of the following: (1) physical function; (2) understanding, remembering, or applying information; (3) interacting with others; (4) concentrating, persisting, or maintaining pace; or (5) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02D.

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3). An Administrative Law Judge will find that an impairment "*meets* the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. § 416.925(c)(3) (emphasis in original); see Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). An Administrative Law Judge will find that an impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). As mentioned above, Plaintiff is challenging the ALJ's medical equivalence finding.

Medical equivalence can be found in one of three ways:

> (1)(i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —
>   (A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
>   (B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>     (ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.

> (2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.
>
> (3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017) (summary of the three ways the Social Security Administration can find medical equivalence) [hereinafter "SSR 17-2p"].³ The Sixth Circuit has observed that this "regulation allows for variation in the number, type, or severity of the claimant's conditions, so long as the

---

3 Social Security Ruling 17-2p [hereinafter "SSR 17-2p"] rescinded and replaced Social Security Ruling 96-6p [hereinafter "SSR 96-6p"] as of its effective date, March 27, 2017. 2017 WL 3928306, at *1 (March 27, 2017). The Court acknowledges a split among the district courts within the Sixth Circuit as to whether SSR 17-2p or the now rescinded SSR 96-6p applies to cases where, as here, the application for benefits was filed before the effective date for SSR 17-2p but the Administrative Law Judge conducted the administrative hearing and issued the decision after March 27, 2017. *See* Thomas o/b/o C.T. v. Berryhill, No. 18-CV-02467-TLP-tmp, 2019 WL 7580293, at *8-9 (W.D. Tenn. Nov. 7, 2019) (survey of such cases), *report and recommendation adopted*, Thomas v. Comm'r of Soc. Sec., No. 2:18-CV-02467-TLP-tmp, 2020 WL 214754 (W.D. Tenn. Jan. 14, 2020). The Court finds the reasoning in Thomas persuasive and concludes that SSR 17-2p, not SSR 96-6p, applies here because the ALJ conducted the administrative hearing and issued the decision after March 27, 2017. Id.

claimant's overall impairment is 'at least of equal medical significance' to a listed impairment." Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 784 (6th Cir. 2017) (quoting 20 C.F.R. § 404.1526(b)).

The first means of demonstrating medical equivalence does not apply here because this is not a case where the severity of a claimant's impairment almost, but not quite, meets the criteria of a listed impairment. *See* 20 C.F.R. § 416.926(b)(1). Nor is the third method applicable here as this is not a case where a claimant's impairments, in combination, may medically equal a listing where each impairment alone did not. *See* 20 C.F.R. § 416.926(b)(3).

But the second way of demonstrating medical equivalence does apply here because Plaintiff's migraine impairment is closely analogous to, but technically not, a listed impairment. *See* 20 C.F.R. § 416.926(b)(2). Notably, at the time the ALJ conducted the hearing and issued his decision, the Social Security Administration ("SSA") provided guidance pertaining to the evaluation of medical equivalency in cases involving migraines. *See* Social Security Program Operations Manual System ("POMS") DI § 24505.015 (effective May 13, 2016). It indicates that Listing 11.02 Epilepsy is the most closely analogous listing for determining whether a claimant's migraine condition is medically equivalent to a listing. POMS DI 24505.015(B)(7)(b), Example 2; s*ee also* Willis v. Comm'r of Soc. Sec., No. 2:19-CV-11689, 2020 WL 1934932, at *3-4 (E.D. Mich. April 22, 2020) (acknowledging that epilepsy Listing 11.02 should be utilized in determining whether migraine headaches medically equal a listing); Rugg v. Comm'r of Soc. Sec., No. 1:18-CV-937, 2020 WL 1527037, at *5 (W.D. Mich. March 31, 2020) (applied Listing 11.02); Melissa G. v. Saul, No. 18CV50218, 2019 WL 4392995, at *6-7 (N.D. Ill. Sept. 13, 2019) (courts routinely apply epilepsy Listing 11.02 when analyzing severe migraines at step three because there

is no separate listing for migraines or headaches.); Rader v. Comm'r of Soc. Sec., No. 2:17-CV-00131-CWD, 2018 WL 4087988, at *2-7 (D. Idaho Aug. 27, 2018) (The most analogous listing for determining medical equivalence for chronic migraines is Listing 11.02, Epilepsy, non-convulsive.).

Listing 11.02 provides as follows:

> 11.02 *Epilepsy*, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (11.00H4) despite adherence to prescribed treatment (11.00C); or.
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>    1. Physical functioning (see 11.00G3a); or
>    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>    3. Interacting with others (see 11.00G3b(ii)); or
>    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii); or
>    5. Adapting or managing oneself (see 11.00G3b(iv); or
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>    1. Physical functioning (see 11.00G3a); or
>    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>    3. Interacting with others (see 11.00G3b(ii)); or

> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 11.02.[4] At first blush it is hard to imagine how an epilepsy listing that requires generalized tonic-clonic seizures, which involve a loss of consciousness, or dyscognitive seizures, which involve an alteration of consciousness, could be considered the most closely analogous listing for determining whether a claimant's migraine condition is medically equivalent to a listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, §§ 11.00H(1)(a) and 11.00H(1)(b). However, the POMS mentioned above provides the following illustrative example of how Listing 11.02 is utilized to determine medical equivalence when the claimant has a migraine impairment:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, non-convulsive. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least of equal

---

4 Regarding "physical functioning" in Paragraph D(1), "a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities (*see* 11.00G3)." 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 11.00G(1)(a). Concerning the four areas of mental functioning identified in Paragraph D(2)-(5), "a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings (*see* 11.00G3)." 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 11.00G(1)(b).

> medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals Listing 11.02.

Social Security POMS DI 24505.015(B)(7)(b), Example 2.[5]

Subsequent to the ALJ issuing his decision in this case, the SSA issued additional guidance pertaining to evaluation of medical equivalency in cases involving headache disorders. *See* SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019) (guidance on how to evaluate a headache impairment under the Listing of Impairments); POMS DI § 24508.010 (effective February 13, 2018). In relevant part, SSR 19-4p reads:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or

---

[5] http://www.lb7.uscourts.gov/documents/115-cv-14702.pdf

> applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

2019 WL 4169635, at *7. While this guidance was not in effect when the ALJ issued his decision, it confirms what POMS DI 24505.015(B)(7)(b), Example 2, indicates. Specifically, evidence that a claimant did not experience seizures is irrelevant to the question of whether that claimant's migraine impairment is medically equivalent to Listing 11.02. Id.; Santiago Ortiz v. Comm'r of Soc. Sec., No. 19-CV-0538MWP, 2020 WL 5792968, at *4 (W.D. N.Y. Sept. 29, 2020) (Based on a comprehensive survey of SSA issued guidance and caselaw the district court concluded *evidence of seizures is not required to establish that migraines are medically equivalent to Listing 11.02*.). Instead, evidence regarding the frequency and severity of the migraines must be considered in assessing whether a claimant's migraine impairment medically equals Listing 11.02. Id.

Notably, one district court has observed that in some cases SSR 19-4p and other SSA guidance may not have been in effect when the Administrative Law Judge issued his or her decision, yet the federal courts considered and relied upon those resources in reviewing step three determinations involving migraines. *See e.g.* Santiago Ortiz, 2020 WL 5792968, at *4-8 (citing Lerouge v. Saul, No. 4:19-CV-00087-SPM, 2020 WL 905756, *8 (E.D. Mo. 2020) (considering SSR 19-4p); Crewe v. Comm'r of Soc. Sec., No. 17-CV-1309S, 2019 WL 1856260, *4 (W.D.N.Y. 2019) (considering POMS § DI 24505.015); Worley v. Berryhill, No. 7:18-CV-16-FL, 2019 WL 1272540, *4 (E.D.N.C.) (considering SSA Q&A 09-036 and POMS § DI 24505.015); Rader v. Comm'r of Soc. Sec., No. 2:17-CV-00131-CWD, 2018 WL 4087988, *6 (D. Idaho 2018) (same)).

After conducting a very thorough survey, that district court reached the following astute conclusion:

> **This guidance and the caselaw applying it make clear that evidence of seizures is not required to establish that migraines are medically equivalent to Listing 11.02**. *See* SSR 19-4p, 2019 WL 4169635 at *7 ("[t]o evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an [acceptable medical source] of a typical headache event ...; the frequency of headache events; adherence to prescribed treatment; side effects of treatment ...; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day"); *Crewe*, 2019 WL 1856260 at *4 (medical equivalency may be found where claimant has migraine headaches despite treatment at least twice weekly lasting from 4 to 72 hours and accompanied by aura, alteration of awareness, intense throbbing, severe pain, nausea and photophobia requiring rest in a quiet, dark room for relief) (citing POMS § DI 24505.015); *Mesecher v. Berryhill*, 2017 WL 998373, *4 (N.D. Tex. 2017) (medical equivalency may be found where a claimant suffers from migraine headaches occurring more than once a week accompanied by alteration of awareness or "significant interference with activity during the day that may result from, e.g., a need for a darkened, quiet room; lying down without moving; or a sleep disturbance that impacts on daytime activities") (citing SSA Q&A 09-036); *see also Fortner v. Saul*, 2020 WL 532969, *3 (D.S.C.) ("courts have held that a migraine impairment can be functionally equivalent to [Listing 11.02] where severe headaches or migraines occur at least once per week for three consecutive months despite adherence to prescribed treatment"), *report and recommendation adopted by*, 2020 WL 528174 (D.S.C. 2020); *Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988 at *6 ("[b]oiled down, Listing 11.02 requires three main elements: (1) a detailed documentation of pain and resultant symptoms; (2) occurrence of the impairment at least twice a week during the period of three consecutive months of prescribed treatment; and (3) that the impairment significantly alters a claimant's awareness or daily activity").

Santiago Ortiz, 2020 WL 5792968, at *4 (bold emphasis added). Simply stated, evidence that a claimant did not experience seizures is irrelevant to the question of whether that claimant's

migraine impairment is medically equivalent to Listing 11.02. Id. Instead, evidence regarding the frequency and severity of the migraines must be considered in assessing whether a claimant's migraine impairment medically equals Listing 11.02.

The Sixth Circuit has instructed when an Administrative Law Judge finds that a claimant does not meet or medically equal a specific listing, the Administrative Law Judge must actually evaluate the evidence, compare it to the section of the Listing at issue, and "give an explained conclusion, in order to facilitate meaningful judicial review." Johnson v. Saul, No. 1:18-CV-00175-HBB, 2019 WL 5902168, at *5 (W.D. Ky. Nov. 12, 2019) (quoting Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011)). "Without it, it is impossible to say that the [Administrative Law Judge's] decision at Step Three was supported by substantial evidence. Reynolds, 424 F. App'x at 416. Subsequent to the Sixth Circuit expressing these articulation requirements, SSR 17-2p became effective.

Notably, SSR 17-2p expresses articulation requirements for a favorable and an unfavorable finding on the issue of medical equivalence. 2017 WL 3928306 at *4. Considering Plaintiff's arguments, the Court need only discuss the latter. In pertinent part, SSR 17-2p instructs that an Administrative Law Judge "must consider all evidence in making a finding that [a claimant's] impairment(s) does not medically equal a listing." Id. This appears to consistent with the Sixth Circuit's instruction that an Administrative Law Judge must "actually evaluate the evidence." Reynolds, 424 F. App'x at 416. However, SSR 17-2p also instructs:

> If [an Administrative Law Judge] believes the evidence already received in the record does not reasonably support a finding that the [claimant's] impairment(s) medically equals a listed impairment, the [Administrative Law Judge] is ***not required to articulate specific evidence*** supporting his or her finding that the [claimant's]

16

> impairment(s) does not medically equal a listed impairment. ***Generally***, ***a statement*** that the individual's impairment(s) ***does not medically equal a listed impairment constitutes sufficient articulation*** for this finding.

2017 WL 3928306 at *4 (emphasis added). This is contrary to the Sixth Circuit's requirement that the Administrative Law Judge compare the evidence to the section of the Listing at issue and "give an explained conclusion, in order to facilitate meaningful judicial review." However, SSR 17-2p does explain:

> An adjudicator's ***articulation of the reason***(s) why the individual is or is not disabled ***at a later step*** in the sequential evaluation process ***will provide rationale that is sufficient for a*** subsequent reviewer or ***court to determine the basis for the finding*** about medical equivalence at step 3.

Id. (emphases added). Construing SSR 17-2p in a light most consistent with the Sixth Circuit's instructions in Reynolds, while an Administrative Law Judge is not required to do so at step three, he or she will provide a sufficient explanation for a court to determine the basis for the unfavorable finding about medical equivalence.

      3.    Discussion

At step three, the ALJ began with his conclusion: "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)" (Tr. 19). In the discussion that followed, he specifically analyzed whether Plaintiff's migraine impairment medically equaled a listing (Id.). The ALJ's analysis reads as follows:

> There is no specific listing for migraine headaches. However, I considered same under 11.02. The evidence does not suggest that

17

> the claimant's migraines cause an altered state of consciousness or that she experiences a marked limitation in any one of the following: physical functioning, understanding, remembering, or applying information, interacting with others, or concentrating, persisting, or maintain pace, or adapting or managing oneself.

(Id.). The ALJ's step-three determination indicates he fundamentally misapprehended the medical equivalency evaluation by requiring evidence that Plaintiff experienced dyscognitive seizures which result in an altered state of consciousness. As explained above, such evidence cannot be used to support the ALJ's conclusion that Plaintiff's migraine impairment is not medically equivalent to Listing 11.02. *See* Santiago Ortiz, 2020 WL 5792968, at *4 (citations omitted). Instead, as Plaintiff and the SSA materials point out, the ALJ's focus should have been on records from the treating sources memorializing Plaintiff's statements regarding: her symptoms such as aura, the intensity and type of headache pain, nausea, photophobia, the need to lie down in a quiet dark room, medications prescribed, and the duration and frequency of the headaches. *See* POMS DI 24505.015(B)(7)(b), Example 2; *see also* SSR 19-4p, 2019 WL 4169635, at *7.

Additionally, the ALJ's vague reference to "the evidence" does not facilitate meaningful judicial review as to whether substantial evidence supports his finding that Plaintiff's migraines do not cause a marked limitation in any one of the five areas of function identified in Listing 11.02D(1)-(5). To the extent Defendant suggests consideration of the ALJ's "paragraph B criteria" findings for Listing 12.04, the Court concludes these findings are irrelevant because they assess the limitations imposed by Plaintiff's depression, not her migraine headaches (*see* Tr. 20-21). Moreover, the ALJ's "paragraph B criteria" findings for Listing 12.04 and RFC findings at step four do not address the impact on functioning when Plaintiff experiences a migraine headache (Tr. 20-21, 22-27). *See* POMS DI 24505.015(B)(7)(b), Example 2; *see also* SSR 19-4p, 2019 WL

4169635, at *7. As Plaintiff aptly points out, the ALJ should have considered her statements regarding the frequency and severity of her migraines that are memorialized in the treatment notes of her neurologists and Alysia G. Wheeler, APRN (Tr. 433-38, 459-65, 577-84, and Tr. 683-85, 837-47, 1100-06, 1113-21) and Ms. Wheeler's opinion concerning the frequency and severity of Plaintiff's migraines (Tr. 1108-11). True, the ALJ discounted Ms. Wheeler's opinion in part because she was not an acceptable medical source (Tr. 25). The ALJ also found the severity of Ms. Wheeler's limitations appeared to be based on Plaintiff's subjective complaints which the ALJ found inconsistent with mild findings on physical examination that addressed Plaintiff's physical strength, gait, extremity range of motion, and sensation (Tr. 25, *see* Tr. 22-27). But as Plaintiff points out, and SSA guidance seems to indicate, when the ALJ assigned weight to Ms. Wheeler's opinions, he should have considered evidence pertaining to the frequency and severity of Plaintiff's migraine headaches. *See* POMS DI 24505.015(B)(7)(b), Example 2; *see also* SSR 19-4p, 2019 WL 4169635, at *7. Thus, the ALJ's assignment of weight to Ms. Wheeler's opinion does not appear to be supported by substantial evidence.

In conclusion, the ALJ has not provided a sufficient explanation for the Court to determine the basis for his unfavorable finding about medical equivalence at step three. Further, what rationale the ALJ did provide at steps three and four indicates he fundamentally misapprehended the medical equivalency evaluation by citing evidence that is not relevant to assessing whether Plaintiff's migraine impairment is medically equivalent to Listing 11.02. The ALJ's error was not harmless because if the ALJ had properly analyzed step three and found the evidence Plaintiff put forth supported a finding that she medically equaled Listing 11.02, Plaintiff would have received benefits regardless of what the ALJ's conclusion would have been at steps four and five. *See*

Reynolds, 424 F. App'x at 416. As the Court has no way to review the ALJ's insufficient step three ruling, the undersigned will vacate the final decision of the Commissioner and, pursuant to sentence four of 42 U.S.C. § 405(g), remand the case to the Commissioner for further proceedings.

Considering the conclusion reached above, the Court declines to address Plaintiff's other challenges to the final decision of the Commissioner.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED.**

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

February 8, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel